IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MICHAEL LANE,                           §
TDCJ #1238595,                          §
                                        §
            Plaintiff,                  §
                                        §
v.                                      §          CIVIL ACTION NO. H-06-0875
                                        §
HARRIS COUNTY JAIL                      §
MEDICAL DEPARTMENT, *et al.*,           §
                                        §
            Defendants.                 §

## MEMORANDUM AND ORDER

State inmate Michael Lane filed this action, *pro se* and *in forma pauperis*, under 42 U.S.C. § 1983, alleging that his civil rights were violated while he was in custody at the Harris County Jail.  He sues the "Harris County Jail Medical Department" as well as two individual physicians.   The individual defendants have filed a joint motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. # 11).  The Harris County Jail Medical Department has filed a motion for summary judgment.  (Doc. # 13). Lane has filed a response to each of the defendants' motions (Docs. # 17, # 21), along with several motions of his own.  (Docs. # 14, # 19, # 22).  After considering all of the pleadings and motions under the applicable law, the Court grants the motions filed by the defendants, denies the plaintiff's motions, and dismisses this case for reasons set forth below.

## I.   **BACKGROUND**

Lane is currently in custody of the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ") at the Coffield Unit.[1]   This case concerns an incident that occurred at the Harris County Jail (the "Jail") while Lane was a pretrial detainee.  Lane sues the Harris County Jail Medical Department (the "Jail Medical Department") and two individual physicians, Dr. Seal and Dr. Trong,[2] who Lane identifies as supervisory officials at the Jail.  Both of these physicians are reportedly employed by the University of Texas Medical Branch ("UTMB") to provide care to inmates at the Jail.

Lane complains that, on April 14, 2004, he fell from a "top bunk bed" at the Jail, striking his head on the concrete floor and striking his "left side and back" on the neighboring bed.  Lane alleges that Dr. Trong sent an "untrained medical official without the mandatory required [*sic*] medical equipment" to respond to the incident after security officers reported that Lane had fallen from his bunk.  This unidentified medical official reportedly failed to check Lane's "vital signs" or assess the severity of his condition.  This untrained medical official then ordered two inmates to carry Lane, who weighed approximately 250 pounds, a distance of fifty feet, holding him by the arms and legs.  While carrying Lane in

---

[1]     Lane is serving a life sentence as the result of two convictions for aggravated sexual assault from the 184th District Court of Harris County, Texas, in cause numbers 933046 and 964815.  *See Lane v. State*, 174 S.W.3d 376 (Tex. App. — Houston [14th Dist.] Sept. 15, 2005, pet. ref'd).

[2]     The medical records suggest that Dr. Trong's surname is actually spelled Truong.  The answer and the motion to dismiss filed by Dr. Trong adopts the plaintiff's spelling.  (Doc. # 10, # 11).  For the sake of consistency, the Court will use the spelling found in the pleadings.

this manner, the inmates dropped him "on his back on the concrete floor."  Lane was then "slung on a roller bed" that was waiting in the hallway to transport him to the clinic operated by the Jail Medical Department.  Lane reports that he was not secured to the roller bed at any time during this transport and that the "untrained medical official's" actions in moving him were unsafe.

Lane now complains that he was moved improperly after his fall because the medical official who responded was not properly trained and had inadequate equipment to transport him to the Jail clinic.  Lane alleges that he now suffers a "permanent chronic spinal injury," that he "is solely dependent on prescribed pain medication," and that "he is in constant pain." Citing "medical negligence and deliberate indifference," Lane blames his injuries on a failure to adequately train medical personnel to respond properly in an emergency.  Lane seeks a preliminary and permanent injunction ordering the defendants to provide proper equipment for the care of inmates in both "standard and emergency conditions" and an order directing Dr. Seal to "properly train all medical personnel adequately."  In addition, Lane seeks an injunction directing Dr. Trong to enforce all standard operating procedures to ensure inmate welfare and "medical safety."  Lane also seeks a declaratory judgment, as well as $1.5 million in compensatory and punitive damages from the Jail Medical Department and $50,000 in compensatory and punitive damages from both Dr. Seal and Dr. Trong.

Dr. Seal and Dr. Trong have filed a joint motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim against them upon which relief can be granted.  (Doc. # 11). The Jail Medical Department has filed a motion for summary

judgment, arguing that Lane's claims against it fail as a matter of law.  (Doc. # 13).  Lane

has filed a response to each of the defendants' dispositive motions.  (Docs. # 17, # 21).  Lane

has also filed a motion for appointment of counsel, a motion to suppress evidence submitted

by the Jail Medical Department, and a motion for leave to amend the complaint.  (Docs. # 14,

# 19, # 22).  The parties' arguments are addressed below under the governing standard of

review, starting with the defendants' motions.

## II.   STANDARDS OF REVIEW

The motion to dismiss by Dr. Seal and Dr. Trong is governed by Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  Motions to dismiss under Rule 12(b)(6) are appropriate

only when a complaint fails to state a legally cognizable claim.  *See Ramming v. United

States*, 281 F.3d 158, 161 (5th Cir. 2001).  A motion to dismiss under Rule 12(b)(6) "is

viewed with disfavor and is rarely granted." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242,

247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards*,

677 F.2d 1045, 1050 (5th Cir. 1982)).  A complaint should not be dismissed for failure to

state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957).

The motion for summary judgment by the Jail Medical Department is governed by

Rule 56 of the Federal Rules of Civil Procedure.  Under Rule 56, a court must determine

whether "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Capitol Indem. Corp. v. United States*, 452 F.3d 428, 430 (5th Cir. 2006).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted). Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist. *Celotex*, 477 U.S. at 322-23; *Whiting v. University of Southern Miss.*, 451 F.3d 339, 345 (5th Cir. 2006).

The plaintiff proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Under this standard, pleadings filed by a *pro se*

litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them.  *See id*; *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992); *see also Ogbodiegwu v. Wackenhut Corrections Corp.*, 202 F.3d 265 (5th Cir. 1999) (unpublished table opinion) ("Although the pleadings filed by *pro se* parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' *pro se* parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment.").

## III.   DISCUSSION

### A.   Exhaustion of Administrative Remedies

The Jail Medical Department moves for summary judgment on the grounds that Lane did not exhaust all available administrative remedies as required by the Prison Litigation Reform Act ("the PLRA") before filing this suit.  Under the PLRA, an inmate is required to exhaust administrative remedies for all "action[s] . . . brought with respect to prison conditions" before filing a civil rights suit in federal court under 42 U.S.C. § 1983 or "any other Federal law."  42 U.S.C. § 1997e(a).  The Supreme Court has held repeatedly that § 1997e(a) requires exhaustion of *all* administrative procedures before an inmate can sue in federal court.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the PLRA requires exhaustion of all claims

concerning prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong).  The exhaustion requirement plainly applies to the claims raised by Lane about his treatment at the Harris County Jail.

The Harris County Sheriff's Department has a three-step grievance process that allows all persons in custody at the Jail the opportunity to attempt informal resolution, followed by a formal grievance and then an appeal, if necessary, consistent with procedures outlined in the *Inmate Handbook*.  (Doc. #13, Motion for Summary Judgment, Exhibit 3, Harris County Jail *Inmate Handbook*).  According to the *Inmate Handbook*, a copy of which was provided to Lane upon his book-in at the Jail, inmates are instructed to "first try to solve the problem with the Deputy or Staff Member on duty."  (*Id*. at 4).  If informal means of resolution do not result in a solution, inmates "may then file a Grievance."  (*Id*.).  If a formal grievance is not resolved at this initial level following an investigation, it goes to a hearing before the Inmate Grievance Board.  (*Id*.).  The inmate will be notified of the Grievance Board's decision in writing within fifteen days.  (*Id*.).  If the inmate disagrees with the findings of the Grievance Board, then the inmate is instructed to appeal that result to the Captain of the Inmate Affairs Division.  (*Id*.).

Lane alleges that he filed more than one grievance regarding the incident that occurred at the Jail on April 14, 2004, but he concedes in his complaint that he did not pursue an appeal.[3]  (Doc. # 1, *Complaint* at ¶ 20).  In an attempt to excuse his failure to exhaust, Lane

---

[3]     Dr. Seal and Dr. Trong have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust because Lane concedes that he did not complete an
                                                                                              (continued...)

reports that he was transferred from the Jail to state prison before he could take an appeal. (*See id.*).  The record refutes Lane's contention that he did not have an opportunity to file an appeal.

The record provided by the Jail Medical Department shows that Lane filed at least two formal grievances concerning the incident that occurred on April 14, 2004.  Lane's first grievance, dated May 11, 2004, complained about the level of care that he received after his fall and requested additional treatment for his lingering pain:

> I, Michael Lane, fell out of a top bunk on Apr. 14, 2004 at approximately 3:30 a.m.  I landed on my head and slammed my right side into the neighboring bunk.  I have an eye witness who witness [*sic*] the accident.  Medical arrived and did not follow the proper medical procedures in moving an individual with possible fractures or spinal injury.  I was out by inmate [*sic*] through orders of medical.  I was mocked and ridiculed by the medical staff.  I was x-rayed and released.  Despite the great pain I was in or the accident I had just had. [*sic*] I recently discovered no report made [*sic*] of the accident by the duty officer.  I'm still in great pain and the medicine I am receiving is useless.  This is to document I was hurt and is [*sic*] in need of medical attention.  There is a physical problem with my spine.

---

[3](...continued)
appeal from his initial grievance regarding the incident.  The Jail Medical Department filed a motion for summary judgment that raises this same issue.  Attached to the summary judgment motion were exhibits that include Lane's prison grievance records.  The motion for summary judgment filed by the Jail Medical Department gave Lane ample notice that the issue of exhaustion would be addressed as provided under Federal Rule of Civil Procedure 56, and Lane had a reasonable opportunity to respond.  *See* FED. R. CIV. P. 12(b) (requiring notice and a reasonable opportunity to respond with pertinent material when a court elects to convert a Rule 12(b)(6) motion to one for summary judgment).  Because the Jail Medical Department's summary judgment motion included evidence and arguments on the issue of exhaustion which are equally applicable to all defendants, the Court reviews this issue under Rule 56 and not under Rule 12(b)(6) as proposed by Dr. Seal and Dr. Trong.

(Doc. # 13, *Motion for Summary Judgment*, Exhibit 1, Grievance Records - Complaint No. 563).  The action requested by this complaint was to be "examined by a more adequate medical staff," specifically, "[a]n outside doctor."  (*Id.*).

A staff member investigated Lane's grievance and determined that his claim of inadequate care was unfounded.  (Doc. # 13, *Motion for Summary Judgment*, Exhibit 1, Grievance Records - Response to Complaint No. 563).  In his report to the Inmate Grievance Board, which is dated May 21, 2004, the investigator noted that Lane had been examined by three physicians and that he had been prescribed appropriate medications.  (*Id.*).  Lane was informed that if his current medications were "not effective" to treat his condition, then he should submit a sick call request ("SCR") for reevaluation by a physician for possible adjustment of his medication regimen.  (*Id.*).

Lane did not file an appeal from this grievance.  Instead, he filed another grievance on May 23, 2004, which repeated his complaint about inadequate medical care following the fall from his top bunk:

> On the 14th day of April 2004, at approximately 3:30, I fell from a top bunk in housing area 6N1B.  I was improperly transported to the medical facility. I'm in constant pain and have made numerous request [*sic*] for medical assistance & medication renewal.  I have had three doctors to check me and have received three different evaluations. At least two of the doctors report is [*sic*] inadequate.  Unknowing if their opinions are medical based or assumptions.

(Doc. # 13, *Motion for Summary Judgment*, Exhibit 1, Complaint No. 609).  As with his prior complaint dated May 11, 2004, the action requested by this grievance is for a medical examination by an "outside physician."  (*Id.*).  A staff member investigated the complaint,

but reported on June 16, 2004, that Lane had been transferred to state prison.  (Doc. # 13, *Motion for Summary Judgment*, Exhibit 1, Response to Complaint No. 609).

This record discloses that Lane did have an opportunity to file an appeal before his transfer to TDCJ.  According to the record, Lane was transferred to TDCJ on or about June 15, 2004.  Lane received a copy of the response to his May 11, 2004 grievance on May 21, 2004.[4]  At that time, Lane could have filed an appeal from the investigator's decision that his May 11, 2004 grievance was "unfounded," but he did not do so.  Instead, Lane bypassed the opportunity to file an appeal by submitting another grievance on May 23, 2004, regarding the medical treatment that he received after his fall.[5]  By failing to complete both steps of the

---

[4]     The investigator's response is signed by Lane, documenting that he received a copy of the investigator's decision on that date. (Doc. # 13, *Motion for Summary Judgment*, Exhibit 1, Grievance Records - Response to Complaint No. 563).

[5]     In addition, the Court takes judicial notice that, before his transfer to TDCJ on June 15, 2004, Lane filed three lawsuits concerning his April 14, 2004 fall. On June 2, 2004, Lane filed suit against the trial judge and the Assistant District Attorney prosecuting him after he was made to come to court the day after his fall on April 14, 2004. *See Lane v. Duggan, et al.*, Civil Action No. H-04-2160 (S.D. Tex.). That suit was dismissed on June 8, 2004, for failure to state a claim based on a finding that the defendants were entitled to immunity from suit. On June 9, 2004, Lane filed suit against the Texas Commission on Jail Standards, complaining that the bunk beds were defective and that he was injured as a result. *See Lane v. Texas Comm'n on Jail Standards*, Civil Action No. H-04-2238 (S.D. Tex.). This suit was dismissed for want of prosecution on August 12, 2004. On June 9, 2004, Lane also filed suit against the "Medical Department," alleging "medical malpractice" in connection with efforts by "untrained medical staff" to move him to the Jail clinic after his fall from the top bunk on April 14, 2004. *See Lane v. Medical Department*, Civil Action No. H-04-2228 (S.D. Tex.). This suit was dismissed on August 27, 2004 for want of prosecution.

grievance process available at the Jail before he was transferred to TDCJ on June 15, 2004,

Lane failed to exhaust administrative remedies that were available to him.[6]

The Supreme Court has emphasized that the exhaustion requirement found in the

PLRA, 42 U.S.C. § 1997e(a), mandates "proper exhaustion," *Woodford v. Ngo*, — U.S. —,

126 S. Ct. 2378, 2387 (2006), which demands compliance with prison procedural rules.

Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the

administrative process by flouting an agency's procedural rules. *See id*., 126 S. Ct. at 2389-

90. By failing to complete the grievance process in compliance with Jail procedures, Lane

did not properly exhaust his administrative remedies before filing his civil rights complaint

in federal court. This is not sufficient to satisfy the PLRA's exhaustion requirement found

in § 1997e(a), which mandates exhaustion *before* filing suit. *See Underwood v. Wilson*, 151

F.3d 292, 296 (5th Cir. 1998) (affirming the dismissal even under circumstances that would

seem "inefficient"), *cert. denied*, 526 U.S. 1133 (1999).

Even if the Court were to excuse Lane's failure to complete the appeal portion of the

grievance procedure in place at the Jail, the grievances filed by Lane on May 11 and May

23, 2004 are not factually sufficient to exhaust the substance of the claims raised in the

present complaint. While an inmate is not required to present a legal theories in his

---

[6]     Medical records show that Lane returned to the Harris County Jail from TDCJ for unspecified
reasons in October of 2004 through December 20, 2004, and that he received additional
treatment for complaints of back pain during this time. The record shows that Lane did not
file any other grievances regarding the April 14, 2004 incident during this time. (Doc. # 13,
*Motion for Summary Judgment*, Exhibit 1, Grievance Records).

grievances, he is required to present facts that are sufficient alert officials to a problem and give them an opportunity to address it. *See Johnson v. Johnson*, 385 F.3d 503, 517-18 (5th Cir. 2004). The level of specificity required in a grievance should be interpreted in light of the grievance rules of the particular prison system. *See id.* at 517. The grievance procedure outlined in the Harris County Jail *Inmate Handbook* asks for specific details regarding the incident and the parties involved. The *Inmate Handbook* specifically asks for a written statement that "fully and truthfully explains the incident that occurred," along with the "date, time and location of the incident," and the "names of any Deputies, Staff Members or inmates who were involved or are witnesses." (Doc. #13, Motion for Summary Judgment, Exhibit 3, Harris County Jail *Inmate Handbook* at 4).

The complaint in this case alleges that the defendants are responsible for Lane's injuries because they failed to properly train medical personnel and failed to provide adequate equipment to respond in an emergency. The grievances filed by Lane on May 11, and May 23, 2004, provide information about the date, time, and location of his fall from the top bunk on April 14, 2004, as well as a general description of his primary problem, namely, a desire for "more adequate" medical treatment. The grievances do not make reference to Dr. Seal or Dr. Trong, or any other specific individual, and they do not detail any wrongdoing by supervisory officials. Thus, the grievances filed by Lane are insufficient to exhaust claims against Dr. Seal and Dr. Trong.

Moreover, the facts provided by Lane are also insufficient to give adequate notice regarding the substance of his claims. A fair reading of the grievances shows that Lane's

primary complaint concerned his request additional medical treatment and pain medication. Indeed, the investigator who responded to Lane's first complaint on May 11, 2004, construed the grievance as a request for additional treatment, verified that Lane had been examined by at least three physicians, and advised Lane to file another sick call request to adjust his medication. (Doc. # 13, *Motion for Summary Judgment*, Exhibit 1, Grievance Records - Response to Complaint No. 563).

There is no reference in the grievances to a lack of adequate equipment as alleged by Lane in the complaint. Likewise, although the grievances reference Lane's view that he was improperly transported to the clinic from his cell by one unidentified medical worker, his allegations do not accuse Jail officials of failing to train medical personnel properly. In that regard, other than alerting officials to the particular incident involving Lane and his fall from the top bunk, the grievances filed by him do not provide facts suggesting an overall failure to train medical personnel to respond in an emergency. The grievances filed by Lane are therefore insufficient to exhaust the claims that he makes in his complaint.

In summary, the record shows that Lane failed to properly exhaust his administrative remedies by completing the Jail grievance process before filing suit in federal court. Likewise, the grievances filed by Lane did not fairly present the claims contained in his complaint or give adequate notice to Jail officials of the issues raised in this lawsuit. Lane's failure to exhaust administrative remedies affects all of his claims, meaning that his complaint is subject to dismissal for lack of compliance with § 1997e(a). Because the record discloses no genuine issue of material fact, the motion for summary judgment on this issue

13

is granted.  Alternatively, Lane's claims against the defendants fail for other reasons that are outlined in more detail below.

### B.    Lack of Legal Capacity

The complaint in this case names the Jail Medical Department as the primary defendant.  The Jail Medical Department moves for summary judgment on the grounds that it lacks the requisite legal capacity to be a proper party.  As a division of the Harris County Sheriff's Department, which is charged with operating the Harris County Jail, and which is itself a department of Harris County, Texas, the Jail Medical Department maintains that it is a *non sui juris* entity, meaning that it lacks legal capacity to sue or be sued.

A party to a lawsuit must have the capacity to sue or be sued.  *See* FED. R. CIV. P. 17; *Maxwell v. Henry*, 815 F. Supp. 213, 215 (S.D. Tex. 1993).  In Texas, a county sheriff's department is not a legal entity capable of being sued, "absent express action by the superior corporation (the county, in the case of the sheriff's department) 'to grant the servient agency with jural authority.'" *Jacobs v. Port Neches Police Dep't*, 915 F. Supp. 842, 844 (E.D. Tex. 1996) (quoting *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991)).  Because it is merely a division within the Harris County Sheriff's Department, the Jail Medical Department asserts that the requisite authority is lacking in this instance.  Thus, the Jail Medical Department maintains that it does not have a separate legal existence and cannot be a proper party.

Lane does not allege or otherwise show that the Jail Medical Department has been granted the legal capacity to sue or be sued.  Because the Jail Medical Department lacks the

requisite legal capacity, the defendant's motion for summary judgment on this issue is granted.  To the extent that Lane's claims are deemed against Harris County, his claims against this defendant fail for additional reasons discussed further below.

### C.    Inadequate Medical Care

In this instance, the complaint filed by Lane alleges that he received inadequate medical care as the result of a failure to properly train medical personnel.[7]  The Jail Medical Department contends that, to the extent he alleges a civil rights violation against Harris County or any of its medical personnel, Lane fails to establish a valid claim.  Lane's civil rights complaint is governed by 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To establish liability under § 1983, a civil rights plaintiff must establish two elements:  (1) state action, *i.e.*, that the conduct complained of was committed under color of state law, and (2) a resulting violation of federal law, *i.e.,* that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States.  *See Collins v. City of Harker*

---

[7]    The Jail Medical Department observes that the individual defendants in this case, Dr. Seal and Dr. Trong, are not employed by Harris County, but are instead employed by UTMB.  Even if the physicians were employed by Harris County, however, the Jail Medical Department insists that Lane has no valid claim because the records demonstrate that he received proper care.

*Heights*, 503 U.S. 115, 120 (1992); *Baker v. McCollan*, 443 U.S. 137, 142 (1979); *see also Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002) (In short, "[s]ection 1983 provides a claim against anyone who, 'under color of' state law, deprives another of his or her constitutional rights.") (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994)).

### 1.    No Constitutional Violation

The Jail Medical Department disputes that Lane has established the requisite underlying constitutional violation for purposes of making a claim under 42 U.S.C. § 1983, or that he was otherwise provided inadequate medical care.  Lane's claim for denial of adequate medical care is governed by the deliberate indifference standard found in the Eighth Amendment to the United States Constitution.[8]

A prison official's "deliberate indifference to serious medical needs of prisoners" can constitute "unnecessary and wanton infliction of pain" of the type proscribed by the Eighth Amendment and actionable under 42 U.S.C. § 1983.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required.

---

[8]    It appears from the record that Lane was a pretrial detainee at the time he fell from his bunk bed, but that he was convicted sometime thereafter on an undisclosed date.  The Fifth Circuit has recognized that there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care.  *See Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) (citing *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc)), *cert. denied*, 534 U.S. 1136 (2002).  Accordingly, the same standard governs constitutional claims concerning medical care by pretrial detainees and convicted inmates.  *See id.*

*Gobert v. Caldwell*, — F.3d —, — n.12, 2006 WL 2474846, *2 (5th Cir. 2006) (citation omitted).  In this context, it is "obduracy and wantonness, not inadvertence or error in good faith," that characterizes the conduct prohibited by the Eighth Amendment, "whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."  *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  "Thus, the prison official's state of mind must be examined to determine whether the undue hardship endured by the prisoner was a result of the prison official's deliberate indifference."  *Bradley*, 157 F.3d at 125 (citing *Wilson v. Seiter*, 501 U.S. 294 (1991)).

The deliberate indifference standard has both an objective and subjective component.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To establish deliberate indifference under this standard, the prisoner must show that the defendants were both (1) aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed.  *See Farmer*, 511 U.S. at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).  Under the subjective prong of this analysis, a prison official acts with deliberate indifference "only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it."  *Gobert*, — F.3d at —, 2006 WL 2474846, *2 (quoting *Farmer*, 511 U.S. at 847).

The Fifth Circuit has stated that the deliberate indifference standard is an "extremely high" one to meet.  *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.

17

2001).  "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances."  *Gobert*, — F.3d at —, 2006 WL 2474846, *2 (citations omitted).  Furthermore, "the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'"  *Id.*  A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"  *Id.* (citations omitted).  A review of Lane's allegations, and the record of care that he received, shows that he fails to demonstrate deliberate indifference in this instance.

In support of the motion for summary judgment, the Jail Medical Department provides copies of Lane's medical records, documenting the care that he received promptly after his fall from the top bunk on 3:30 a.m. on April 14, 2004.  (Doc. #13, *Motion for Summary Judgment*, Exhibit 2, Medical Records).  The Jail Medical Department also presents an affidavit from the Jail Clinic Administrator, Bobby Davis, who summarizes Lane's treatment records and the policies and procedures in place at the Jail Medical Department.  (Doc. #13, *Motion for Summary Judgment*, Exhibit 4, Davis Affidavit).  According to Davis, the Jail Medical Department has policies and procedures to provide for medical needs of inmates at the Jail and these policies have been approved by the Texas Commission on Jail Standards and the National Commission on Correctional Health Care.  (*Id.* at ¶ 6).  Davis maintains that, according to the medical records, there is no evidence that Lane sustained any

18

permanent spinal injury as the result of his fall or that he was treated inappropriately according to the applicable standard of care. (*See id*. at ¶¶ 7, 9-11).

The medical records reflect that a nurse arrived at Lane's cell (6N1B) at 3:30 a.m. on April 14, 2004, to find him "lying prone on [the] floor." Other inmates informed the nurse that Lane "fell out of his bed on the top bunk." Lane was described as "unresponsive." Contrary to Lane's complaint in this case, the records show that the nurse took note of his vital signs before he was brought to the Jail clinic. At 3:40 a.m., Lane was examined at the clinic, where he was observed laying on his back. Lane responded to ammonia and to needlesticks to his left foot, but he would not cooperate with the examination or answer any questions posed by the examining physician. The physician noted that Lane was not in apparent distress and decided to re-evaluate him later when he was "cooperative."

At 4:10 a.m., the physician noted that Lane began to cooperate after he was told that he would be returned to his cell to go back to court that day.[9] Lane explained that he fell after he "dropped his pillow" and was trying to pick it up. Lane complained of pain in his left posterior lower ribs and the lower lumbar area of his back. The physician observed that Lane's musculoskeletal range of motion was "intact" and that his spine was nontender to palpitation. The physician questioned whether Lane was "malingering." An x-ray was done on Lane's lumbar region and left posterior ribs. Motrin was prescribed for pain.

---

[9]     According to other pleadings filed by Lane, it appears that this incident occurred while Lane's sexual assault trial was underway. *See Lane v. Duggan, et al.*, Civil Action No. H-04-2160 (S.D. Tex.).

Later that day on April 14, 2004, Lane returned to the clinic for a follow-up evaluation by a different physician.  Lane complained of a burning sensation in the right second lumbar lateral paraspinal area and stiffness in his back.  After a physical examination, the doctor noted that Lane was obese.  He concluded that Lane suffered a "musculoskeletal strain," but he was not able to "rule out herniated nucleus puposis."  This doctor prescribed two tablets of the painkiller Vicodin, and another drug called Flexaril, twice a day for fifteen days.  He also restricted Lane to a bottom bunk.  A review of the x-rays taken after Lane's fall from the top bunk did not disclose evidence of a serious injury.

According to the medical records, Lane was treated on several additional occasions to review his prescriptions and to address his complaints of pain.  Medical records show that, on April 18, 2004, Lane complained that he had not received his medication.  Lane complained on April 26, 2004, that the medication he was receiving (Vicodin, Flexaril, and Motrin) was ineffective to alleviate his back pain.  A nurse examined Lane and scheduled him for a routine appointment.  On April 29, 2004, Lane submitted a sick call request to renew his medication and for an appointment with a physician.  An appointment was made for May 6, 2004.

On May 6, 2004, a physician evaluated Lane.  This physician opted to prescribe Darvocet, Robaxin, and Naprosyn twice a day for fifteen days to treat Lane's complaints of back pain.  On May 16, 2004, Lane submitted a sick call request to renew his medication. Lane's prescriptions for Robaxin and Naprosyn were renewed by a physician.  On May 22, 2004, a nurse scheduled a follow-up appointment for Lane on May 28, 2004.  On May 26,

2004, Lane submitted a sick call request for additional pain medication pending that appointment.

A physician evaluated Lane the following day, on May 27, 2004. Lane complained of a headache and back pain. Noting that Lane had a history of migraine headaches, the physician prescribed a regimen of Imitrex, Phenergan, Baclofen, Ibuprofen, and Ultram for a period of thirty days. On June 9, 2004, Lane submitted a sick call request complaining about his pain medication. Lane complained of a migraine on June 13, 2004. Lane was seen by a physician that same day, who prescribed unspecified medication. Lane transferred to TDCJ on June 15, 2004.

Lane does not dispute that he received treatment after his fall, that x-rays were taken, and that he was prescribed medication to treat his pain. To the extent that Lane disagrees with the level of care that he has received, the Fifth Circuit has held repeatedly that mere disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. *See Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985); *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977). Likewise, although Lane alleges that the defendants were negligent and that the level of care constitutes "medical malpractice," these allegations are not sufficient to demonstrate a constitutional violation or to maintain an action under 42 U.S.C. § 1983. *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001), *cert. denied*, 534 U.S. 1136 (2002); *see also Stewart*, 174 F.3d at 534 ("[A]lthough inadequate medical treatment may, at a certain point,

rise to the level of a constitutional violation, malpractice or negligent care does not.").  Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation.  *See Harris*, 198 F.3d at 159 (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)).  It is well established that only "deliberate indifference" implicates a constitutional violation in this context.  *See Wilson*, 501 U.S. at 297; *see also Farmer*, 511 U.S. at 835.  Thus, allegations of inadvertent failure to provide adequate medical care, or of a negligent diagnosis, simply fail to establish the requisite culpable state of mind.  *See Wilson*, 501 U.S. at 297; *Stewart*, 174 F.3d at 534; *see also Domino*, 239 F.3d at 756 (noting that "an incorrect diagnosis does not amount to deliberate indifference").

The records do not show that medical personnel were deliberately indifferent to Lane's medical condition.  In that respect, Lane fails to demonstrate that medical personnel at the Jail "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"  *Gobert*, — F.3d at —, 2006 WL 2474846, *2 (citations omitted).  Under these circumstances, Lane has fails to demonstrate a constitutional violation or a valid claim under 42 U.S.C. § 1983 in connection with his medical care.  Therefore, the defendants are entitled to summary judgment on this issue.

### 2.      Municipal Liability - Failure to Train

The Jail Medical Department argues further that Lane fails to establish the requisite elements for municipal liability against Harris County.  As a unit of local government, Harris

County cannot be held liable under 42 U.S.C. § 1983 for the actions of officers or employees on a theory of *respondeat superior. Monell v. New York Dep't of Social Serv.*, 436 U.S. 658, 691 (1978).  A municipality such as Harris County is only liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy.  *Id*. at 694. Thus, municipal liability under § 1983 requires proof of three elements in addition to the underlying claim of a violation of rights: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."  *Cox v. City of Dallas, Tex.*, 430 F.3d 734, 748 (5th Cir. 2005) (citations omitted), *cert. denied*, — U.S. —, 126 S. Ct. 2039 (2006).

The Jail Medical Department argues that Lane has not demonstrated that he suffered harm as the direct result of an official policy.  "An 'official policy' is either a policy statement, ordinance, regulation, etc., that has been officially adopted by a policymaker, or a persistent, widespread practice of officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the municipality's policy." *Cox*, 430 F.3d at 748 (citing *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002)).  Lane does not point to any official policy in particular that fits within the definition.  Likewise, he neither alleges or shows a widespread pattern or practice amounting to official custom attributable to Harris County.  Instead, his complaint concerns an isolated incident that occurred on April 14, 2004, which allegedly resulted from a failure to train medical staff at the Jail.

An alleged failure to train employees can reflect a policy for purposes of liability under § 1983 where the failure to train represents a deliberate or conscious choice by a municipality. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Thus, "a municipality can, in some circumstances, be held liable under § 1983 'for constitutional violations resulting from its failure to train municipal employees.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992) (quoting *City of Canton*, 489 U.S. at 380). The Fifth Circuit has recognized in a failure-to-train case, however, that "isolated violations are not the persistent, often repeated constant violations that constitute custom and policy." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir.), *cert. denied*, 506 U.S. 973 (1992). Thus, the isolated incident alleged by Lane is not sufficient to demonstrate the requisite policy for purposes of liability under 42 U.S.C. § 1983 in this instance.[10] Absent a showing that Lane received inadequate medical care as the result of an official policy, Lane fails to raise a

---

[10] There is a limited exception for single-incident liability under 42 U.S.C. § 1983. In narrow circumstances, a single incident can establish an official policy "where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Burge v. St. Tammany Parish*, 336 F.3d 363, 372 (5th Cir. 2003), *cert. denied*, 540 U.S. 1108 (2004); *see Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404-07 (1997). Lane does not present such facts here. In that regard, the allegations and the evidence fail to create a reasonable inference that the alleged injury in this case was a highly probable consequence of a failure to train rather than the result — at best — of poor judgment on the part of one medical worker. This does not constitute a failure-to-train claim. As the Supreme Court has observed, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality], for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390-91. Likewise, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program at issue or the legal basis for holding the municipal entity liable. *See id.* at 391.

genuine issue of material fact regarding municipal liability on Harris County's part.  The motion for summary judgment on this issue is granted.

**D.     Lack of Personal Involvement – Dr. Seal and Dr. Trong**

Dr. Seal and Dr. Trong argue that the claims against them must be dismissed for failure to state a claim because the complaint does not establish that they had the requisite personal involvement in the incident that forms the basis of Lane's suit.  Personal involvement is an essential element of a civil rights cause of action, meaning that there must be an affirmative link between the injury and the defendant's conduct.  *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).  In order to successfully plead a cause of action in § 1983 cases, a civil rights plaintiff must "enunciate a set of facts that illustrate the defendants' participation in the wrong alleged." *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).

The complaint filed in this case alleges that Lane was harmed when an unidentified, untrained medical worker ordered two inmates to move him following his fall from the top bunk.  Lane contends that Dr. Trong is responsible for sending this untrained medical worker to his cell.  The complaint contains no specific allegations of personal involvement by Dr. Seal, who is identified as a supervisor within the Jail Medical Department.  Lane simply asserts that Dr. Seal and Dr. Trong are supervisors and therefore "legally responsible" for the injuries that he sustained at the hands of the untrained worker who responded to his cell on April 14, 2004.

A supervisor may not be held liable for a civil rights violation under a theory of *respondeat superior* or vicarious liability. *See Monell*, 436 U.S. at 691; *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003). Supervisory officials can only be held liable if the plaintiff demonstrates either one of the following: (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the deprivation. *See Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("[T]he misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor."). Supervisory liability exists without overt personal participation in an offensive act only if supervisory official implements a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Thompkins*, 828 F.2d at 304 (quotations omitted).

The complaint filed by Lane fails to allege sufficient facts showing that Dr. Seal and Dr. Trong had any personal involvement with the incident forming the basis of Lane's complaint or that there was any causal connection between a particular policy implemented by these defendants and the alleged wrongful conduct. Lane's conclusory allegations and generalized assertions are not sufficient to state a claim; particular facts are required to specify the personal involvement of each defendant. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *Fee v. Herndon*, 900 F.2d 804 (5th Cir.), *cert. denied*, 498 U.S. 908

(1990).  Because the complaint fails to establish the requisite personal involvement by Dr.

Seal or Dr. Trong, the defendants' motion to dismiss for failure to state a claim is granted.[11]

## IV.   PLAINTIFF'S MOTIONS

In addition to his response to the defendants' dispositive motions, Lane has filed

motions to suppress the evidence against him, to amend his complaint by adding several

additional defendants, and a motion for appointment of counsel.  Each motion is denied for

reasons set forth briefly below.

### A.     Motion to Suppress Evidence

In response to the motion for summary judgment, Lane has filed a motion to suppress

the evidence against him under Article 38.23 of the Texas Code of Criminal Procedure.[12]

Lane argues that the medical, disciplinary, and grievance records attached to the defendant's

motion are incriminatory and were seized without a warrant.  Lane reasons, therefore, that

the evidence must be suppressed.  The Harris County Jail Medical Department has filed a

---

[11]   Although Lane has filed a motion for leave to amend his complaint, he does not propose any
       additional facts showing personal involvement by Dr. Seal or Dr. Trong.  Even if he did, the
       record of Lane's grievances reflects that he failed to exhaust administrative remedies with
       respect to such a claim against these defendants.

[12]   Article 38.23 of the Texas Code of Criminal Procedure provides that "No evidence obtained
       by an office or other person in violation of any provisions of the Constitution or laws of the
       State of Texas, or the Constitution or laws of the United States of America, shall be admitted
       in evidence against the accused on the trial of any criminal case."

reply to Lane's motion, correctly noting that the rule found in Article 38.23 of the Texas Code of Criminal Procedure does not apply in this civil action.

Lane argues further that his medical records should be suppressed pursuant to privacy provisions of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 18, 26, 29 and 42 U.S.C.). The Court notes that a primary objective of HIPAA is the protection of a patient's private medical information. *See Citizens for Health v. Leavitt*, 428 F.3d 167, 171 (3rd Cir. 2005). Lane cites no authority, however, showing that HIPAA precludes a prison health care provider from presenting medical records to rebut a prisoner's claim that he was denied adequate medical care. Because Lane's arguments are without merit, his motion to suppress evidence (Doc. # 19) is denied.

### B.    Motion to Amend the Complaint

After the defendants filed answers and dispositive motions in this case, Lane submitted a motion for leave to amend the complaint. He seeks leave to add several parties as defendants in this case, including Harris County and UTMB. Lane also seeks to add a nurse identified as L. Tatum, LVN. Lane explains that Nurse Tatum is the previously unidentified, untrained medical worker who instructed two inmates to move him following his fall from the top bunk as described in the original complaint. The motion for leave to amend must be denied in this instance because Lane has failed to provide an actual amended complaint, as directed by the Court in its order dated May 4, 2006. (Doc. # 5, ¶ 7) (directing the plaintiff to provide an amended complaint along with any motion for leave to amend).

28

Moreover, the motion for leave to amend must be denied for additional reasons outlined briefly below.

The Jail Medical Department opposes the motion to amend, arguing that any proposed claim against Harris County is futile in this instance.  (Doc. # 23).  The Fifth Circuit has held that it is within a district court's discretion to deny a motion to amend if it is futile.  *See J.R. Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (citations omitted).  For reasons discussed above, an amendment adding Harris County as a defendant would be futile because Lane has failed to articulate an official policy for purposes of establishing liability under 42 U.S.C. § 1983 in this case.

A proposed claim against UTMB would also fail, as that entity is entitled to immunity under the Eleventh Amendment to the United States Constitution from claims for monetary damages of the type brought by Lane.[13]  Federal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996).  Unless expressly waived, the Eleventh Amendment bars an action in federal court by, *inter alia*, a citizen of a state against his or her own state, including a state agency.  *See Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002).  UTMB is an agency of the State of Texas, giving it Eleventh Amendment immunity. *See* TEX. EDUC. CODE ANN. § 61.003(5); TEX. GOV'T CODE

---

[13]     The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.

ANN. § 572.002(10)(B);  *Richardson v. Southern Univ.*, 118 F.3d 450, 452 (5th Cir. 1997).

To the extent that Lane seeks monetary damages in this case, the Eleventh Amendment bars

claims against UTMB and its employees acting in their official capacity, which would also

include Dr. Seal and Dr. Trong.  Accordingly, Lane has no claim against UTMB.[14]

Regarding Nurse Tatum, Lane cannot amend the complaint to add her as a defendant

at this late date because the statute of limitations has expired with respect to any claim

against her.  The original complaint was filed on March 10, 2006.[15]  The incident that forms

the basis of the complaint occurred on April 14, 2004.  Civil rights claims brought under 42

U.S.C. § 1983 are governed by the two-year statute of limitations provided by Texas law.

*See Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir.), *cert. denied*, 534 U.S. 820

(2001); TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a).  This means that once the above-

referenced claims accrued the plaintiff had two years to file a civil rights complaint

concerning these allegations.  *See Gonzalez v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998).

---

[14]     A narrow exception to Eleventh Amendment immunity exists for suits brought against
individuals in their official capacity, as agents of the state or state entity, where the relief
sought is injunctive in nature and prospective in effect.  *See Aguilar v. Texas Dep't of
Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *Ex parte Young*, 209 U.S. 123
(1980)).  Lane seeks injunctive relief in this instance. Because his request for injunctive relief
concerns the conditions of confinement at the Harris County Jail, however, Lane's transfer
to TDCJ has made this request moot.  *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2001);
*Herman v. Holiday*, 238 F.3d 660, 665-66 (5th Cir. 2001).

[15]     The complaint filed by Lane is not dated, but the Clerk's Office received it on March 14,
2006, in an envelope post-marked March 10, 2006.  For statute of limitations purposes,
courts in this circuit treat the date a *pro se* prisoner deposits his pleadings in the mail as the
filing date.  *See Fisher v. Johnson*, 174 F.3d 710, 712 n.8 (5th Cir. 1999) (citing *Spotville v.
Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (per curiam)), *cert. denied*, 531 U.S. 1164 (2001).
Accordingly, the complaint is considered filed on March 10, 2006.

A cause of action accrues, so that the two-year statute of limitations begins to run, when the plaintiff knows or has reason to know of the injury which is the basis of the action.  *See id*.

Lane submitted his request for leave to amend on September 5, 2006, which is outside the two-year statute of limitations on his claims.  According Rule 15(c)(3) of the Federal Rules of Civil Procedure, an amended pleading will relate back to the date of the original only when the following criteria are met:

(1)     relation back is permitted by the law that provides the statute of limitations applicable to the action; or

(2)     the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; or

(3)     the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, *within the period provided by Rule 4(m) for service of the summons and complaint*, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, *but for a mistake concerning the identity of the proper party*, the action would have been brought against the party.

FED. R. CIV. P. 15(c)(3) (West 2006) (emphasis added).  Even assuming that Nurse Tatum could have received timely notice of the suit, Lane does not satisfy the requirement that his failure to include her name in the original complaint was the result of a mistake concerning her identity.

The relation-back doctrine found in Rule 15(c) "is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the

result of an error, such as a misnomer or misidentification." *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998) (citation omitted).  Lane's failure to identify Nurse Tatum in this instance was not the result of a mistake or a misidentification.  Rather, it appears that Lane did not name Nurse Tatum as a defendant because he did not learn her name until after he received a copy of his medical records from the defendants in this case.[16]  The Fifth Circuit has held that failing to identify a party under these circumstances is not considered a "mistake" for purposes of Rule 15(c).  *See Jacobson*, 133 F.3d at 320-21.  Thus, under these circumstances, Lane's proposed amended complaint does not relate back under Rule 15(c). *See id* at 322-23 (holding that, where "the proposed amendment . . . was not necessitated by the 'mistake or 'misidentification' at which Rule 15(c)(3) is aimed," the Rule does not allow relation back to the filing of the original complaint).  For all of these reasons, Lane's motion for leave to amend (Doc. # 22) is denied.

**C.     Motion for Appointment of Counsel**

Citing his status as an indigent inmate, Lane asks for the appointment of counsel to help him litigate this case in the event of a trial.  The Court notes that Lane has capably represented himself in this proceeding.  His submissions are neatly typed and supported by authority.  Lane simply has not demonstrated a valid claim in this instance.  The motion for appointment of counsel (Doc. # 14) is denied.

---

[16]     Nurse Tatum is identified in the medical records provided by the Jail Medical Department in this instance as the individual who responded to Lane's cell on April 14, 2004.  (Doc. # 13, *Motion for Summary Judgment*, Exhibit 2, Medical Records).

## V.   CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.      Dr. Seal and Dr. Trong's joint motion to dismiss (Doc. # 11) is **GRANTED**.

2.      The motion for summary judgment filed by the Harris County Jail Medical Department (Doc. #13) is **GRANTED**.

3.      The plaintiff's motions for appointment of counsel, to suppress evidence, and for leave to amend the complaint (Docs. # 14, # 19, # 22) are **DENIED**.

4.      The complaint is **DISMISSED** with prejudice.

The Clerk is directed to provide copies of this order to the parties.

SIGNED at Houston, Texas, on **October 5, 2006.**

Nancy F. Atlas
United States District Judge